(Opinion published 52 N. W. Rep. 142.)

---

WILLIAM FITZGERALD *vs.* OWEN J. EVANS.

Argued April 13, 1892. Decided May 16, 1892.

**Sales—Warranty against Open and Visible Defects.**—A special warranty upon the sale of a horse may be made to cover blemishes or defects which are open and visible, as well as others, if the intention to do is clearly manifested.

**Evidence—Admissions of a Party to the Action.**—Material statements of fact, made by a party while negotiating a sale, may be received as evidence in the nature of admissions, though not admissible to vary the terms of the contract.

**Evidence of Damages.**—On the question of damages for breach of warranty, any facts affecting the value of the property, which may properly enter into the estimate of witnesses or jurors, may be shown.

Appeal by defendant, Owen J. Evans, from an order of the District Court of Hennepin county, *Canty,* J., made August 25, 1891, refusing a new trial.

Plaintiff, William Fitzgerald, on February 20, 1890, bought of defendant a stallion for $1,000. Defendant warranted the animal in writing, as follows:

"I, O. J. Evans, do warrant and guarantee said colt to be sound in every particular, and a fairly sure foal getter, and that the small

puff on the inside left hock joint will all disappear entirely, and he is standard bred and eligible to registration in Wallace's stud book."

This action was to recover damages for breach of this warranty. The small puff on the inside left hock joint proved to be a blood or bog spavin. The jury found for plaintiff, and assessed his damages at $450.

*Albert F. Foster,* for appellant.

The evidence offered by the defendant to show that the plaintiff knew of the unsoundness complained of, and fully understood its character, before he bought the horse, was clearly competent. If he had such knowledge, that defect was by law excepted from the warranty; its existence was no breach of the warranty, and no foundation for damages. *McCormick* v. *Kelly,* 28 Minn. 135; *Brown* v. *Bigelow,* 92 Mass. 242; *Hill* v. *North,* 34 Vt. 604; *Chadsey* v. *Greene,* 24 Conn. 573; *Vandewalker* v. *Osmer,* 65 Barb. 556; *Birdseye* v. *Frost,* 34 Barb. 367; *Fisher* v. *Pollard,* 39 Tenn. 314; *Long* v *Hicks,* 21 Tenn. 305; *Williams* v. *Ingram,* 21 Tex. 300.

*Akers & Lancaster,* for respondent.

We admit that a general warranty does not extend to defects apparent upon bare inspection; but, where there is a special warranty against the very defect complained of, the case is not within this general rule. Benj. Sales, § 821; Chit. Cont. (11th Ed.) 644; *Brown* v. *Bigelow,* 92 Mass. 242; *Watson* v. *Roode,* 30 Neb. 264.

VANDERBURGH, J.    This is an action for breach of warranty in the sale of a stallion. The blemish or defect complained of by plaintiff, and which proved to be a spavin, was obvious and visible in the hock or joint of the animal, but was of such a character that it was uncertain in the mind of the plaintiff whether it would be permanent or harmful, and there was a special warranty in the contract covering the particular defect. A purchaser may undoubtedly protect himself against a specified defect, though visible, by a special warranty.

It is a matter of contract, which it is competent for parties to enter into, if they desire to do so.

The statements and representations of the defendant in respect to the value of the horse, made at the time of the sale, were properly received in evidence, not to vary or determine the nature of the contract, but as in the nature of admissions, as bearing on the question of damages.

The defendant was entitled to have the entire conversation, in connection with such admissions, and of which they were a part, admitted in evidence in so far as it was relevant; but he did not ask this, but did ask to show specifically instead that $250 was deducted from the price on account of the spavin, which was incompetent, in view of the written contract.

The letter of the plaintiff, addressed to the defendant about one week after the sale, containing a reference to the opinion of expert horsemen to the effect that the horse had "a bog spavin," was incompetent evidence, but we think the error in receiving it proved to be without prejudice, for the reason that the defendant himself, on his cross-examination, admitted that the blemish complained of was "a bog spavin." Evidence that the horse, if sound, would have been specially valuable for breeding purposes, was admissible. Any facts affecting his value might be shown which would properly enter into the estimate of witnesses or jurors in determining the question of his value. As to the effect of the disease upon the value of the stallion for breeding purposes, expert witnesses testified that it was subject to be transmitted. There was also evidence offered tending to show the prevalence of such a belief and opinion among horsemen and breeders. This evidence was objected to, but we are of the opinion that it was properly received, as affecting the question of value. If, by the general consent of breeders on the question of heredity, the unsound condition of the animal would be likely to affect the patronage and market value of the horse, that fact would be material on the question of his usefulness and value. It would very much resemble a case of general dislike or disapproval of a particular breed of horses as affecting the salability or usefulness of a similar animal.

No other assignment of error requires notice.

Order affirmed.

(Opinion published 52 N. W. Rep. 143.)