**Donna RAY, Appellant,**

v.

**The AMERICAN NATIONAL BANK & TRUST COMPANY OF SAPULPA, Oklahoma, as personal representative of the estate of Glenn O. Young, Deceased, Appellee.**

No. 80007.

Supreme Court of Oklahoma.

July 19, 1994.

Rehearing Denied May 16, 1995.

---

William L. Hickman, Hickman & Hickman, Tulsa, for appellant.

John M. Young, Sapulpa, for appellee.

WATT, Justice:

Plaintiff, Donna Ray, appealed from the trial court's order sustaining Bank's demurrer to Ray's evidence. Ray claimed damages for breach of warranty of title in a warranty deed, breach of an employment contract, conversion of personal property, and breach of a contract concerning the sale of a horse. Ray also appealed from the trial court's order granting summary judgment to defendant, American National Bank, as personal representative of Glenn O. Young, deceased, on Ray's cause of action for malicious interference with the employment contract. The Court of Appeals, Division 4, affirmed the trial court's summary judgment, and the portion of the trial court's demurrer concerning the sale of the horse. The Court of Appeals reversed the trial court's demurrer and ordered a new trial on Ray's causes of action for breach of warranty of title, breach of

employment contract, and conversion of personal property.

## FACTS

Glenn O. Young was an elderly Creek County lawyer.[1] Young had a ranch near Keifer, Oklahoma, which contained more than 1300 acres. The focus of this suit was on a rock house, which Young built in 1934, and the forty acre tract upon which it sat. Later, Young built a large house on an adjoining tract, about 300 feet from the rock house. Young lived in the newer house with his second wife, Charlotte.

Ray, a divorcée, had business dealings with Young at Young's Creek County ranch as early as 1972. Later, Ray remarried. In 1975, Ray and her husband, Ed Ray, agreed to move into the rock house and manage a cattle operation in which they jointly engaged with Young. The agreement was covered by a written contract. In 1978, Young delivered the first of several warranty deeds to the Rays. The first deed ostensibly conveyed to the Rays the forty acre tract upon which the rock house sat. Young's wife did not sign any of the deeds. The Rays agreed not to record the first deed, and to keep its existence secret from Young's wife.

In 1982, the Rays separated, and Ed Ray left Young's ranch. The Rays were divorced in 1984. In a separate action, commenced after the Rays' divorce, Bank, as Young's conservator, obtained a judgment declaring the 1978 deed to be void. The trial court in the earlier action so held, and the Court of Appeals affirmed, because the property was part of Young's homestead, and Young's wife had not joined in the conveyance.

Ray owned a horse, with Young, named Tuno Commander. She claimed that Young, and his Bank as Young's conservator, had taken possession of the horse and owed Ray for its value. At trial, however, Ray admitted that she had sold the horse and retained the proceeds.

Ray claimed that Bank had tortiously interfered with her contract for employment with Young. Bank, however, was not a stranger to the contract. Bank was serving

---

1. Young died on July 11, 1991, at the age of 91.

as Young's representative when dealing with Ray concerning her employment contract.

According to Ray, she was prevented by Young from removing personal property she owned from the rock house. At one time, Young had threatened Ray while carrying a firearm. The firearm was taken from Young, but a deputy sheriff, who had been called, advised Ray to leave without picking up her property in order to avoid further problems of the sort she had with Young.

## DISCUSSION

### The Warranties of Title are Void and Unenforceable

■ Ray does not dispute that the warranty deeds from Young were void. Ray claims, however, that she has a cause of action under the warranty of title contained in the void deeds. We disagree.

Article 12, § 2, Oklahoma Constitution provides, The owner, if married, [may not] sell the homestead without the consent of his or her spouse. Under 16 O.S.1991 § 4, No deed ... affecting the homestead shall be valid unless ... subscribed by both husband and wife ... Clearly, purported conveyances of homestead property, in which both spouses do not join, are void. We have not previously addressed, however, what effect these provisions have on a claim for breach of the warranty of title against the spouse who executed the deed. We hold that Young's breach of the warranty of title may not be used by Ray as a basis for damages.

■ There are few modern cases on this subject, and most of the cases of any age have dealt with attempts to enforce contracts of sale, rather than with warranties of title in a deeds. We conclude, however, that a claim for damages for failure of the plaintiff's title, sounding in either breach of contract of sale or breach of the warranty of title, presents

the same issue. A contract to convey is held to be within the purview of a statute that requires that any alienation of the homestead property shall be consented to or joined in by husband and wife. *Grice v. Woodworth*, 10 Idaho 459, 80 P. 912 (1904); *Steltzer v. Compton*, 167 Iowa 266, 149 N.W. 243 (1914); *Hodges v. Farnham*, 49 Kan. 777, 31 P. 606 (1892). The agreement will not support an action against the grantor to recover damages. *Ferrell v. Wood*, 149 Ark. 376, 232 S.W. 577, 16 ALR 1033 (1921); *Silander v. Grona*, 15 N.D. 552, 108 N.W. 544 (1906). In support of this conclusion it is reasoned that if damages were recoverable on such a contract it would indirectly tend to defeat the object of the statute requiring the signature of the wife before the homestead can be conveyed. *Silander v. Grona, Id.*

■ Many of the cases dealing with this issue are contained in the annotation, *Contract to Convey Homestead—Signature*, 5 ALR4th 1310 (1981). The basis for the rule is that to allow recovery against the signing spouse would indirectly defeat the purpose of statutory and constitutional provisions designed to protect the homestead by requiring the signature of both spouses on a deed to the property. See, for example, *Weitzner v. Thingstad*, 55 Minn. 244, 56 N.W. 817 (1893). We find this line of authority convincing, and hold that Ray is prohibited by Oklahoma law from stating a cause of action against Young's estate for breach of the warranty of title in the deed. Allowing Ray to do so would be contrary to the clear intent of Article 12, § 2, Oklahoma Constitution, and 16 O.S.1991 § 4.[2]

### Ray is Entitled to a Jury Trial on Her Claims That her Employment Contract Was Breached and That Young Converted Her Personal Property

■ Bank contends that Ray's employment contract with Young was void. Bank

---

2. A few cases have allowed recovery of damages, on equitable principles, from one spouse, although the other did not sign the contract of sale or deed. See, for example, *Glinski v. Sheldon*, 88 Wis.2d 509, 276 N.W.2d 815, 5 ALR4th 1298 (1979), where the court held that a question of fact was presented as to whether the husband had misrepresented to the buyers that his spouse had acquiesced in the sale of homestead proper-

ty. We defer to another day a decision as to whether such a cause of action could be asserted under Oklahoma law, as the issue is not presented by the facts of this appeal. Ray admits that Young told her that his wife did not know about the conveyance, and that Ray agreed to help keep the fact of the conveyance from Young's wife. Thus, there is no misrepresentation issue here.

argues that the record contains clear and convincing evidence showing that Young was incompetent when he signed the employment contract with Ray on December 31, 1984. Bank also claims that Ray abandoned the contract by going into another business, a tanning salon, and failed to establish damages. Ray denies these contentions. We hold that these are fact issues, and must be resolved by a jury.

Bank also claims that there was no proof to support Ray's claim that Young converted her personal property. Ray, however, testified that she was prevented from retrieving her personal property, first by Young who threatened her with a gun, and then by a deputy sheriff, who told her to leave because of the chaos caused by her attempt to remove her property. This issue, too, must be resolved by a jury.

*Ray's Claim That the Horse Tuno Commander was Converted Was Not Supported by the Evidence*

Ray claims that Young converted her interest in the horse, Tuno Commander. The undisputed proof, however, shows that plaintiff sold the horse and retained the proceeds. We hold, therefore, that the trial court correctly sustained Bank's demurrer on this issue.

*The Trial Court Properly Granted Bank Summary Judgment on Ray's Claim for Wrongful Interference With Contract*

Ray contends that Bank wrongfully interfered with her employment contract with Young, and claims a right to punitive damages as a result. Bank, however, was at all times acting on behalf of Young. Bank could not wrongfully interfere with a contract concerning which it was acting in a representative capacity for a party. A cause of action for wrongful interference with contract can arise only when one who is not a party to a contract interferes with that contract by convincing one of the contracting parties to breach its terms. The cause of action sounds in tort. *Mac Adjustment, Inc. v. Property Loss Research Bureau*, 595 P.2d 427 (Okla., 1979). Bank was a party to the contract, in its representative capacity. Thus, we hold

that the trial court properly granted summary judgment to Bank on this issue.

We affirm the trial court's summary judgment to Bank on Ray's wrongful interference with contract claim. We also affirm the trial court's demurrer to Ray's evidence as to all issues except the issues of breach of employment contract and conversion of personal property, which we direct the trial court to submit to a jury for determination.

**CERTIORARI HAVING BEEN GRANTED PREVIOUSLY, OPINION OF THE COURT OF APPEALS IS VACATED, TRIAL COURT'S ORDER AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

LAVENDER, V.C.J., and HARGRAVE, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

SIMMS, J., concurs in result.